UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHARLES DOOLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-3006 |
| | ) | |
| ALFREDA KIBBY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and civilly committed at Rushville Treatment and Detention Facility, brought the present lawsuit pursuant to 42 U.S.C. § 1983, alleging Fourteenth Amendment violations for excessive force, inhumane conditions-of-confinement, and procedural due process. The matter is before the Court for ruling on the Defendants' Motion for Summary Judgment (Doc. 105). For the reasons discussed below, the motion is denied in part, and granted in part.

## PROCEDURAL HISTORY

Plaintiff filed this lawsuit on January 5, 2012. The Court conducted a merit review screening pursuant to 28 U.S.C. § 1915A

and found that Plaintiff stated the following claims: (1) an excessive force claim against Defendants Haage, Chenoweth, Angel, Zimmerman, Keller, Teel, and Maloney; (2) an inhumane conditions-of-confinement claim against Defendants McAdory and Haage; and, (3) a procedural due process claim against Defendant McAdory. (Doc. 14). After a period of discovery, Defendants filed a Motion for Summary Judgment. (Doc. 105). In support of their motion, Defendants filed a DVD video that depicted the events on the day in question. The Court subsequently entered an Order directing the Defendants to file a supplemental brief disclosing the identities of the security staff seen in the video. (Doc. 120). Defendants have complied with that Order. (Doc. 121).

## BACKGROUND

Plaintiff is civilly committed at the Rushville Treatment and Detention Facility ("Rushville" or "TDF") pursuant to the Illinois Sexually Violent Persons Act. On July 9, 2011, Plaintiff declined several requests from staff to work in the kitchen because it was his day off. An exchange between Plaintiff and staff occurred and, as a result of the raised voices and alleged foul language, Plaintiff was offered a two hour cool-down period. During these cool down

periods, TDF residents are confined to their rooms.  Staff members periodically check on the residents throughout the cool-down period.

A short time later, when staff observed another resident sliding a pen underneath Plaintiff's door, a lockdown ensued. Defendant Haage, a Security Therapy Aide ("STA"), went to investigate.  The parties disagree on the exact nature of the exchange, but, either way, the tactical team was called to perform a cell extraction.

Doors to the residents' rooms at Rushville have a small opening, commonly referred to as a "chuckhole."  The opening allows security staff to handcuff residents before unlocking and opening the resident's door.  To do so, the resident must cooperate by standing with his back to the door and placing his hands and wrists through the chuckhole.  Defendants Teel, Chenoweth, Angel, Keller, and Reardon, all members of the tactical team at Rushville, responded to Defendant Haage's request for a cell extraction.

A video of the incident shows the following:  Defendant Keller asked Plaintiff to "cuff up," meaning to stand with his back to the door while placing his hands through the chuckhole.  Plaintiff

complied, though not without some verbal commentary. Defendants Teel and Chenoweth approached Plaintiff's door with a pair of handcuffs. At this point, only the backs of Defendants Teel and Chenoweth are visible, but the clicking noise of handcuffs can be heard, as can Plaintiff's cry of pain. When the camera is moved and Plaintiff's hands appear on video, his right wrist is cuffed and held in place by Defendant Chenoweth. Defendant Teel then secured the cuffs to Plaintiff's left wrist. Defendant Chenoweth escorted Plaintiff to Infirmary Room 5, where Plaintiff was stripped down to his boxer shorts. The mattress in the room was removed moments prior to Plaintiff entering the room. Plaintiff remained in the room wearing only his boxer shorts.

As a result of this incident, Plaintiff's right wrist was examined several times. The results of those examinations showed Plaintiff suffered torn ligaments and other injuries in his right wrist. (Doc. 110-11 at 7-12). During these examinations, Plaintiff stated he experienced ongoing pain in his wrist and numbness in two of his fingers. Id.

Plaintiff remained in Infirmary Room 5 from July 9, 2011 until July 12, 2011. Plaintiff did not receive a mattress because Plaintiff

would not allow Defendant Parsons to place him (Plaintiff) in handcuffs so staff could bring the mattress into the room. Plaintiff's requests for another STA to secure the handcuffs were denied. Plaintiff alleges that the sink did not have running water, the toilet did not work, and his requests for toilet paper were denied. Plaintiff states he made several requests for toilet paper and plumbing maintenance to several STAs, none of whom are defendants in this lawsuit.

For the duration of his time in Infirmary Room 5, Plaintiff was placed on Temporary Special status, the most restrictive resident status at the TDF. Residents are placed on Temporary Special status as a matter of course while an investigation into their alleged conduct takes place, or when perceived as a danger to themselves or others. While on Temporary Special status, residents must eat their meals in their rooms and have limited telephone and property access. Residents may leave their rooms only with approval of the Security Director.

On July 11, 2011, at approximately 8:53 a.m., Plaintiff received written notice of a disciplinary hearing scheduled for July 12, 2011 between the hours of 10:00 a.m. and 12:00 p.m. (Doc.

106-2). The notice advised Plaintiff of the potential rules violations and the incident in question. A disciplinary hearing was held and Plaintiff's status was changed from Temporary Special to Close Management status. Close Management status is less restrictive than Temporary Special status, but more restrictive than the general status of residents at the TDF. While classified on Close Management status, residents are permitted to spend approximately 4-5 hours per day outside their rooms, are allowed to attend treatment programs as approved, purchase items from the commissary, have visitors for one-hour sessions, make outgoing calls, take showers every other day, and are provided with a change of clothes every 3 days. Plaintiff remained classified in Close Management status for 30 days.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is 'genuine' "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 245.

## ANALYSIS

As a resident of Rushville, Plaintiff's claims arise under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment.  Despite this distinction, there exists "little practical difference between the two standards."  Mayoral v. Sheahan, 245 F.2d 934, 938 (7th Cir. 2001) (quoting Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000)).  "The Fourteenth Amendment right to due process provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment."  Forrest v. Pine, 620 F.3d 739, 744 (7th Cir. 2010) (citing Lewis v. Downey, 581 F.3d 467, 475 (7th Cir. 2009)).

## **Excessive Force Claims**

Plaintiff alleged claims for excessive force against defendants Haage, Chenoweth, Angel, Zimmerman, Keller, Teel, Parsons, and Reardon.

In claims for excessive force, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citation omitted); see DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000) (applying Hudson). In making this determination, the court may examine several factors, "including the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." Dewalt, 224 F.3d at 619. Significant injury is not required, but "a claim ordinarily cannot be predicated on a *de minimis* use of physical force." Id. at 620 (citing Hudson, 503 U.S. at 9-10). "Thus, not every push or shove by a prison guard violates a prisoner's constitutional rights." Id.

Plaintiff alleges that while being handcuffed, members of the tactical team bent his wrist in such a way that it caused pain and torn ligaments in his hand.  Defendants argue that any force used was necessary to secure the Plaintiff and reasonable in light of the circumstances.  In support, Defendants submitted a video of the events of July 9, 2011.

The manner in which Defendants Teel and Chenoweth secured the handcuffs on Plaintiff's right wrist is not shown on the video.  Given the sounds of clicking handcuffs and Plaintiff's immediate cries of pain, a reasonable juror could conclude that the amount of force used was unnecessary and applied solely for the purposes of causing pain.  The medical records showing Plaintiff suffered torn ligaments, pain, and numbness in his right wrist as a result of this incident lend support to this conclusion.  As it relates to Defendants Teel and Chenoweth, the Court finds that a genuine issue of material fact exists as to whether these defendants used excessive force against the Plaintiff on the day in question.  As to the remaining defendants, the video clearly shows they did not participate in the application of the alleged force.  Therefore, the

remaining defendants are entitled to judgment as a matter of law regarding the excessive force claims.

## Conditions-of-Confinement

The standard for analyzing a conditions-of-confinement claim in the prison context is well-established: a prison official is liable for denying a prisoner of his or her basic human needs, but only if the official is aware of and deliberately indifferent to an objectively serious risk of harm. Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir.2008). The court must first determine whether the conditions at issue were "sufficiently serious" such that "a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 832, 834 (1994) (internal quotation marks omitted); see also Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir.2006). Prison conditions may be uncomfortable and harsh without violating the Eighth Amendment. See Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir.1997). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" Snipes v. DeTella, 95 F.3d 586, 590 (7th Cir.1996) (citing *Farmer,* 511 U.S. at 832). Therefore, "extreme deprivations are required to make out a conditions-of-

confinement claim." Henderson v. Sheahan, 196 F.3d 849, 845 (7th Cir.1999) (quoting Hudson, 503 U.S. at 9).

Plaintiff was placed on Temporary Special status following the events on July 9, 2011. While in Infirmary Room 5, Plaintiff did not have a mattress and was not provided toilet paper for a few days. Plaintiff also alleges that he had no running water and the toilet did not work. However, even assuming these facts are true, and that Plaintiff suffered the requisite deprivation, Plaintiff has not shown that Defendants McAdory and Haage were deliberately indifferent.

Deliberate indifference is more than negligence, but does not require the plaintiff to show that the defendants intended to cause harm. Mayoral, 245 F.3d at 938. Liability attaches when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). According to Plaintiff, he did not see Defendants Haage and McAdory while he was in Infirmary Room 5. Plaintiff stated in his deposition that he spoke only to STAs Reinhart and Kelly about the plumbing issues. As neither Reinhart

or Kelly are named defendants in this action, Plaintiff has not provided any evidence that Defendants Haage and McAdory were aware of the alleged conditions that give rise to Plaintiff's conditions-of-confinement claim. Therefore, the Court finds that no reasonable juror could find that Defendants Haage and McAdory were deliberately indifferent.

## **Procedural Due Process**

Plaintiff alleges a procedural due process claim against Defendant McAdory related to the discipline he (Plaintiff) received as part of the June 9, 2011 incident. Regardless of whether the confinement is civil or criminal, "[d]isciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause." Miller v. Dobier, 634 F.3d 412, 414-15 (7th Cir. 2011).

There was probable cause to believe that Plaintiff had violated a TDF rule, and placement on Temporary Special status pending the review of those allegations does not offend the due process clause as legitimate security interests exist in not allowing one suspected of such to roam free within the facility. See Holly v. Woolfolk, 415 F.3d 678, 680 (7th Cir. 2005) (analogizing temporary

segregation for an alleged violation of a disciplinary rule to an arrest without a warrant pending a probable cause hearing). Plaintiff remained on Temporary Special status in Infirmary Room 5 for approximately three days before he was provided a disciplinary hearing. Given these facts, the Court cannot find that Plaintiff's due process rights were violated while Plaintiff was on Temporary Special status.

As it relates to Plaintiff's placement on Close Management status, there is no evidence to suggest that Plaintiff was subjected to conditions harsher than those typically experienced by residents on Close Management status. In addition, Plaintiff was provided 24-hour written notice of his disciplinary hearing, and he was allowed to present testimony in his defense. From these facts, no reasonable juror could conclude that placement on Close Management status substantially worsened Plaintiff's conditions of confinement.

## **Qualified Immunity**

Under the doctrine of qualified immunity, "government officials performing discretionary functions are immune from suit if their conduct could reasonably have been thought consistent with the

rights they are alleged to have violated." Borello v. Allison, 446 F.3d 742, 746 (7th Cir. 2006) (citations omitted).  To determine if qualified immunity applies, the court conducts a two-prong analysis: (1) whether "the disputed conduct, as alleged, violates a constitutional right;" and, (2) "whether that right was 'clearly established' at the time of the alleged conduct."  Id. (citing *Wernsing v. Thompson*, 423 F.3d 732, 742 (7th Cir. 2005)).  In analyzing these two prongs, the courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As discussed above, Plaintiff has raised a genuine issue of material fact regarding the force used by Defendants Teel and Chenoweth and, therefore, the Court cannot grant summary judgment on qualified immunity grounds with respect to these defendants.  See Lewis, 581 F.3d at 477.  The Court does not address the qualified immunity issue as it relates to the remaining defendants as the Court has already concluded those defendants are entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED that:**

1) The Defendants' Motion for Summary Judgment [105] is GRANTED in part, and DENIED in part. Defendants' Motion is DENIED as it relates to the excessive force claims against Defendants Teel and Chenoweth, and GRANTED as to all other claims and Defendants. Clerk is directed to dismiss Defendants Haage, McAdory, Angel, Zimmerman, Keller, Parsons, Reardon, and Maloney with prejudice.

2) A final pretrial conference is scheduled for       August 3, 2015 at 3:00 p.m.      . The Plaintiff shall appear by video conference and the Defendants' attorney(s) shall appear in person before the court sitting in Springfield, Illinois. The clerk is to issue a writ for the Plaintiff's participation in the video conference.

3) The Court will send out proposed jury instructions and intends to ask the standard voir dire questions published on the Court's website (ilcd.uscourts.gov/local rules and orders/orders and rules by Judge/Judge Myerscough/General Voir Dire Procedure). By   July 20, 2015  , the parties shall file: 1) an agreed proposed pretrial order; 2) alternate or additional jury instructions (no duplicates); 3) motions in limine; and, (4) additional voir dire questions (not duplicative of the Court's). All proposed instructions shall be clearly marked, identifying the party, the number, and whether the instruction is additional or alternate (i.e., Pl.'s 1, additional; Pl.'s 2, alternate to Court's 3).

4) The Plaintiff and Defendants shall appear in person at trial. Residents of Rushville Treatment and Detention Facility who are not parties to this case shall appear by video conference and Rushville TDF employees who are not parties may also appear by video conference at trial.

**Other nonparty witnesses may appear by video at the court's discretion. Therefore, the proposed pretrial order must include: (1) the name, resident number and place of incarceration for each inmate to be called as a witness; (2) the name and place of employment for each Department of Human Services employee to be called as a witness; and, (3) the names and addresses of any witnesses who are not residents or employees for whom a party seeks a trial subpoena. The party seeking the subpoena must provide the necessary witness and mileage fees pursuant to Federal Rule of Civil Procedure 45.**

5) **A jury trial is scheduled for <u>   September 1, 2015   through September 3, 2015   </u> at 9:00 a.m. at the U.S. Courthouse in Springfield, Illinois. No writs to issue at this time.**

ENTERED:    June 12, 2015

FOR THE COURT:

<u>         *s/Sue E. Myerscough*         </u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE